**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Roselind Tonner,<br><br>  Plaintiff,<br><br>v.<br><br>United States of America, et al.,<br><br>  Defendants. | No. CV-24-08057-PCT-DJH<br><br>**ORDER** |

Pending before the Court is Defendant United States of America's (the "Government" or the "United States") Motion to Dismiss under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) (Doc. 16).[1]  Plaintiff Roselind Tonner ("Plaintiff") has filed a Corrected Response (Doc. 25), and the Government has filed an Amended Reply (Doc. 27).  The matter is fully briefed.[2]  The Court grants, in part, and denies, in part, the Defendant's Motion for the reasons that follow.

**I.   Background**

The Phantom Ranch Campgrounds ("Phantom Ranch") is a lodging on the floor of the Grand Canyon National Park.  (Doc. 16 at 5–6).  According to the Government, it is operated by a concessioner, who is a third-party contractor to the National Park Service

---

[1] Any references to "rules" herein are in reference to the Federal Rules of Civil Procedure, unless stated otherwise.

[2] Plaintiff requested oral argument on the Motion to Dismiss.  The Court finds that the issues have been fully briefed and oral argument will not aid the Court's decision. Therefore, the Court will deny the request for oral argument.  *See* Fed. R. Civ. P. 78(b) (court may decide motions without oral hearings); LRCiv 7.2(f) (same).

("NPS"). (*Id.* at 6). Under the concession agreement, NPS provides utilities, including compost toilets. (*Id.*) In 2017, NPS hired Ray Skeet ("Skeet") to work as a "Utility Systems Repairer Operator" at Phantom Ranch. (*Id.*) He worked a one-person shift of eight days on and six days off. (*Id.*) Every shift, he hiked 9.4 miles from the South Rim of the Grand Canyon to the staff accommodations on the canyon floor. (*Id.*) There is no vehicle access to Phantom Ranch; park visitors and employees travel there either on foot or by mule. (Doc. 16-3 at 7). Skeet communicated to other NPS employees and his supervisors via radio or hard-wired phone at Phantom Ranch. (Doc. 16 at 6). His duties included maintaining the potable water and wastewater systems at Phantom Ranch. (Doc. 16-3 at 7). He also maintained restrooms with flush toilets. (*Id.*) At some point, one of Skeet's supervisors asked him to clean the compost toilets near the north end of Phantom Ranch in addition to his regular duties. (*Id.*) The supervisor only requested that he clean the upper portions of the restrooms, not the vault below the toilets. (*Id.*) Because of his remote location, supervisors only assessed the performance of his duties "periodically" and "informally." (*Id.*)

Plaintiff alleges that Skeet took it upon himself to affix gendered signs ("Ladies" and "Gentlemen") to the compost restrooms even though the restrooms are unisex. (*Id.* at ¶¶ 59–60). He had bought the signs himself as long ago as 2019. (*Id.* at ¶¶ 61, 65). None of Skeet's supervisors had directed him to post the gendered signs, and no other NPS employee posted the signs. (*Id.* at ¶ 61). On September 20, 2020, park visitors caught Skeet while he was unlawfully recording women in a compost restroom marked as "Ladies." (*Id.* at ¶ 55). A female park visitor who was using the restroom noticed an illuminated cellular phone screen in the toilet's chute, which descends into a vault where human waste is collected. (Doc. 16-3 at 16–17). She returned with a friend and saw the phone once again appear and disappear in the toilet chute. (*Id.* at 17). The two women ran to the lower entrance to the composting toilets and found Skeet. (*Id.*) When they accused him of spying on visitors in the restroom, he mentioned that he had been "accused of this before." (Doc. 1 at ¶ 56). The park visitors

reported Skeet's conduct to a park ranger, and Skeet was flown out of the canyon. (Doc. 16-3 at 18). The Government claims that the next day, NPS placed him on administrative leave and then terminated his employment several months later. (Doc. 6 at 7).

Law enforcement later searched Skeet's phone, computer, and tablet. (Doc. 16-3 at 30). In the phone alone, there were over 1500 pictures and videos of adult females and over 100 pictures and videos of apparently juvenile females using both the flush toilets and the compost toilets. (*Id.*) The video footage showed Skeet hiding his phone in the toilets to covertly record women over long periods of time. (*Id.* at 30–31). Several hard drives and memory cards were also impounded as evidence. (Doc. 1 at ¶ 49). Skeet eventually pled guilty to four counts of voyeurism occurring between November 18, 2018 and September 20, 2020. (Doc. 1 at ¶ 70).

Plaintiff alleges that she had visited the Grand Canyon with her husband and some friends from January 9–13, 2019, which included a stay at Phantom Ranch. (Doc. 1 at ¶ 18, 21). Several years later, federal law enforcement informed her that she was one of the women whom Skeet had unlawfully recorded in the restrooms. (Doc. 1 at ¶¶ 26–42). Plaintiff now brings this suit against the United States, NPS, and Unknown Persons and/or Entities (collectively, "Defendants") under the Federal Tort Claims Act ("FTCA"). (Doc. 1 at ¶ 2). She brings three claims: (1) invasion of privacy, (2) intentional infliction of emotional distress, and (3) negligent hiring/supervision. (Doc. 1 at ¶¶ 102–41). The Government has filed a Motion to Dismiss (Doc. 16).

**II.    Legal Standard**

    **A.    Motion to Dismiss Under Rule 12(b)(1)**

A motion to dismiss under Rule 12(b)(1) tests the subject matter jurisdiction of the court. *See Savage v. Glendale Union High Sch.*, 343 F.3d 1036, 1039–40 (9th Cir. 2003). The party asserting jurisdiction bears the burden of rebutting the presumption against subject matter jurisdiction. *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). A court must dismiss a plaintiff's complaint if it fails to establish subject

matter jurisdiction. *Savage*, 343 F.3d at 1039 n.2.

Jurisdictional challenges can be either facial or factual. *See Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004). A facial attack exists when a defendant asserts the complaint's jurisdictional allegations are insufficient on their face to demonstrate jurisdiction. *See Menza v. United States Dep't of the Treasury*, 1999 WL 550243, *1 (D. Or. 1999), *aff'd* 2000 WL 1029069 (9th Cir. 2000). Facial attacks require the court "to look and see if the plaintiff has sufficiently alleged a basis of subject matter jurisdiction, and allegations in [plaintiff's] complaint are taken as true for the purpose of the motion." *Id.* (citations omitted) (alteration in original). Where the attack is factual, "the court need not presume the truthfulness of the plaintiff's allegations." *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004).

### B.   Federal Torts Claim Act

Absent express consent, the United States enjoys sovereign immunity and cannot be sued. *Conrad v. United States*, 447 F.3d 760, 764 (9th Cir. 2006). "When the United States consents to be sued, the terms of its waiver of sovereign immunity define the extent of the court's jurisdiction." *United States v. Mottaz*, 476 U.S. 834, 841 (1986). The FTCA "constitutes a limited waiver of that immunity." *LaBarge v. Mariposa Cnty.*, 798 F.2d 364, 366 (9th Cir. 1986). Because the FTCA waives sovereign immunity, it must be strictly construed in favor of the United States. *Brady v. United States*, 211 F.3d 499, 502 (9th Cir. 2000) (citing *Jerves v. United States*, 966 F.2d 517, 521 (9th Cir. 1992)).

### C.   Motion to Dismiss Under Rule 12(b)(6)

Under Rule 12(b)(6), a court must dismiss a complaint if it fails to state a claim upon which relief can be granted. The complaint requires a "short and plain statement of the claim showing that the pleader is entitled to relief" to ensure that the defendant has "fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The complaint must contain sufficient factual content to state a claim for relief that is "plausible on its face." *Ashcroft v. Iqbal*, 556

U.S. 662, 678 (2009).  A claim is plausible on its face when the factual allegations are sufficient for the court "to draw the reasonable inference that the defendant is liable." *Id.* When evaluating a Rule 12(b)(6) motion, the court must accept the plaintiff's allegations as true and construe them in the light most favorable to the plaintiff.  *Zucco Partners, LLC v. Digimarc Corp.*, 552 F.3d 981, 989 (9th Cir. 2009).  That rule does not apply, however, to legal conclusions.  *Iqbal*, 556 U.S. at 678.  If the court dismisses a complaint for failure to state a claim, it must then determine whether to grant leave to amend.  *See Telesaurus VPC, LLC v. Power*, 623 F.3d 998, 1003 (9th Cir. 2010).

### III. Discussion

The Government argues that (1) the claims of invasion of privacy and IIED should be dismissed under Rules 12(b)(1) and 12(b)(6), (2) the claim of negligent hiring/supervision should be dismissed under Rule 12(b)(1), and (3) all claims against NPS and Unknown Persons and/or Entities should be dismissed because the United States is the only proper defendant in an FTCA lawsuit.  (Doc. 16 at 2–3).  The Court will address each argument in turn.

#### A. Invasion of Privacy/IIED

Plaintiff alleges claims of invasion of privacy and IIED against Defendants under a theory of vicarious liability for Skeet's conduct.  (Doc. 1 at ¶¶ 102–130; Doc. 25 at 12). The Government argues that (1) the Court lacks FTCA jurisdiction and (2) Plaintiff failed to state a claim for the claims of invasion of privacy and IIED because she did not allege sufficient facts to show the acts of Skeet in question were committed in the scope of his employment with NPS.  (Doc. 16 at 2–3).  Because the Government's challenges to the invasion of privacy and IIED claims turn on the same issue of whether Skeet's conduct was committed in the scope of employment, the Court addresses both claims together. The Court finds that it has jurisdiction, and Plaintiff plausibly stated a claim for both invasion of privacy and IIED.

##### 1. Subject Matter Jurisdiction – Scope of Employment

The Government first contends that the Court lacks jurisdiction over the invasion

of privacy and IIED claims because the acts that caused the alleged injuries did not occur in the scope of Skeet's employment. (Doc. 16 at 2). The FTCA grants district courts jurisdiction over claims against the United States for money damages for injury "caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment." 28 U.S.C. § 1346(b). Whether the employee was acting within the scope of his employment depends on the law of the state where the act or omission occurred. *Id.*; *Hartzell v. United States*, 786 F.2d 964, 966 (9th Cir. 1986).

Arizona courts follow principles of agency law for evaluating whether an employee is acting outside the scope of employment. *Engler v. Gulf Interstate Eng'g, Inc.*, 280 P.3d 599, 602 (Ariz. 2012) (adopting Restatement (Third) of Agency § 7.07 (Am. L. Inst. 2006)). Under Arizona law, "[a]n employee's tortious conduct falls outside the scope of employment when the employee engages in an independent course of action that does not further the employer's purposes and is not within the control or right of control of the employer." *Id.* (citing *Robarge v. Bechtel Power Corp.*, 640 P.2d 211, 213–14 (Ariz. Ct. App. 1982)); *Driscoll v. State*, 2023 WL 3514094, at *3 (Ariz. Ct. App. May 17, 2023); *Davis v. Casida*, 2023 WL 2250426, at *1–2 (Ariz. Ct. App. Feb 28, 2023), *review denied* (Aug. 25, 2023).[3] If the conduct furthers the employer's purposes,

---

[3] The parties reference two related *respondeat superior* tests from *Hartzell*, which they refer to as the "Restatement test" and the "control test." (Doc. 16 at 9–10; Doc. 25 at 8–9). The Restatement test holds an employer liable for an employee's act if the act (1) is the kind of work the employee was hired to perform, (2) occurs within the authorized time and space limits, and (3) was intended at least in part to serve the employer. *Hartzell*, 786 F.2d at 966 (citing *Anderson v. Gobea*, 501 P.2d 453, 456 (Ariz. Ct. App. 1972)). The control test requires that "at the time of the [act], the employee is: (1) subject to the employer's control or right to control; and (2) acting in furtherance of the employer's business." *Hartzell*, 786 F.2d at 966 (citing *Robarge*, 640 P.2d at 214). In *Engler*, the Arizona Supreme Court adopted a version of the control test, incorporating the elements of the Restatement test as factors to determine whether the employer had control or the right of control. *See* 280 P.3d at 602. More recently, the Arizona Court of Appeals has followed a version of the Restatement test. *See Doe v. Roman Cath. Church of Diocese of Phoenix*, 533 P.3d 214, 222 (Ariz. Ct. App. 2023) ("An employee's conduct is 'within the scope [of employment] if it is the kind the employee is employed to perform, it occurs within the authorized time and space limits, and furthers the employer's business even if the employer has expressly forbidden it.' " (citation omitted) (alteration in original)), *review denied* (Dec. 15, 2023). The Court observes that the Arizona Supreme Court cited both *Anderson* and *Robarge* when it laid out the rule, *Engler*, 280 P.3d at 602, and believes that the outcome remains the same no matter which test is

- 6 -

it is more likely to have been within the employer's control. *See Engler*, 280 P.3d at 602 (whether an act furthered the employer's purposes is a factor in determining if there was actual control or right of control).

### a. Furtherance of Employment

An employee's tortious act may be in furtherance of employment whether or not "the employer could have expected or foreseen it," and possibly "even if the employer has expressly forbidden it." *Doe*, 533 P.3d at 222 (citation omitted). An employee's act is in furtherance of employment if "the employee 'was performing a service in furtherance of his employer's business,' irrespective of 'whether it was done in a manner exactly as the employer prescribed.' " *Id.* (quoting *Higgins v. Assmann Elecs., Inc.*, 173 P.3d 453, 461 (App. 2007)).

Additionally, "[c]onduct within the scope of employment may be either of the same nature as that authorized *or* incidental to that authorized." *State, Dept. of Admin. v. Schallock*, 941 P.2d 1275, 1282–83 (Ariz. 1997) (identifying three factors when considering incidental conduct: (1) time and place of conduct; (2) previous relation between master and servant; and (3) whether the master had reason to expect that such act would be done) (citing Restatement (Second) of Agency (1958) § 229). The *Schallock* court held that "an employer may be held liable for an employee's acts even if the employee's motive is not to benefit the employer [but] to advance his self interest." *Id.* at 1285. When an employee acts with mixed motives, his motives cut both ways. *Id.* at 1283 (finding an employee acted with mixed motives by running the office pursuant to his employer's interest while also fondling the file clerks pursuant to his personal desires). If the employer was aware of an employee's history of misconduct, it may have implicitly authorized his abusive acts. *Id.* at 1282–83.

However, an employer cannot be liable for an "act undertaken solely for the employee's own purposes." *Doe*, 533 P.3d at 222 (citing Restatement (Third) of Agency § 7.07). Arizona courts have consistently held that sexual misconduct rarely furthers an

applied.

employer's business.[4]  *See, e.g.*, *id.* at 222–23 (holding that sexual assault committed by a priest was solely for his own desires, not in furtherance of the purposes of the diocese); *Smith v. Am. Exp. Travel Related Servs. Co.*, 876 P.2d 1166, 1171 (Ariz. Ct. App. 1994) (holding that sexual assault by a supervisor against an employee did not further the employer's business).  In *Doe*, the court found that a priest's sexual assaults "were not committed for any purpose of his employer, but solely to gratify [his] personal, apparently sexual desires."  533 P.3d at 222.  If there were evidence that the diocese "knew or should have known" of the priest's pattern of misconduct, it could have shown that the diocese, "by doing nothing, condoned and implicitly authorized [the misconduct]."  *Id.*  But since there was no such evidence, the acts "were not expressly or impliedly authorized," nor were they "incidental to his employment"—they were "committed solely to further his own personal interests."  *Id.* at 222 (quoting *Smith*, 876 P.2d at 1171 (Ariz. Ct. App. 1994)); *see also Craig v. M & O Agencies, Inc.*, 496 F.3d 1047, 1059 (9th Cir. 2007) ("Arizona law is clear, however, that an employer is rarely liable for intentional infliction of emotional distress when one employee sexually harasses another. Liability for the employer typically only attaches when a company utterly fails to investigate or remedy the situation." (citations omitted)).

Here, both the invasion of privacy and IIED claims are predicated on Skeet's videotaping of Plaintiff in the bathroom.  (Doc. 1 at ¶¶ 102–30).  Plaintiff does not argue that Defendants directly authorized this act; rather, she contends that it was incidental to authorized conduct and Defendants implicitly authorized it by ignoring it. (Doc. 25 at 8, 12–15).   Plaintiff alleges that Skeet committed the criminal act while performing one of his authorized duties, i.e., cleaning the composting toilets, while in an

---

[4] Even in *Schallock*, the court was careful to indicate that the fact that the employee had the "power to hire and fire, promote and demote, instruct and control" his subordinates "distinguish[ed] the case from the great majority of cases involving torts committed by a servant against either a non-employee or co-employee."  941 P.2d at 1282.  Later vicarious liability cases have also declined to apply *Schallock* when the facts do not involve longstanding managerial harassment.  *See Engler*, 280 P.3d at 603–604 (distinguishing *Schallock* because it dealt specifically with "managerial sexual harassment"); *Doe*, 533 P.3d at 223 (stating that "*Schallock* is narrowly applicable to cases involving longstanding abuse and harassment in the workplace by a manager with authority" over the victim).

authorized location, (Doc. 1 at ¶¶ 55–64), and that he used his access as an employee of NPS to do so. (Doc. 1 ¶¶ at 111–12). Plaintiff further alleges that NPS knew or should have known of Skeet's pattern of misconduct, (Doc. 1 at ¶ 90), because he had been accused of unlawfully recording women before, (Doc. 1 at ¶¶ 36, 89), and because he had affixed gendered signs to the bathrooms, contrary to ordinary NPS practice, and Defendants did not investigate why. (Doc. 1 at ¶¶ 59–62, 88). According to Plaintiff, this is evidence that Defendants condoned and implicitly authorized this behavior. (Doc. 1 at ¶ 90).

The Government counters that Skeet's alleged statement that he had been accused before is too vague to support an inference that Defendants should have known about Skeet's conduct. (Doc. 16 at 13). It also suggests that because this statement was made months after Skeet committed the wrongful act toward Plaintiff, it does not prove any knowledge on the part of NPS at the time of the act. (*Id.*) Plaintiff argues that Skeet's statement, when combined with the fact that his criminal conduct began at least by November 2018, suggests that NPS should have known about it by the time of Plaintiff's visit to Phantom Ranch. (Doc. 25 at 12–13).

Taking the allegations in the Complaint as true, as the Court must, the Court finds that Skeet's statement does not demonstrate knowledge on NPS's part at the time of the wrongful act. But even discounting the statement, Plaintiff has alleged that Skeet bought and put up gendered signs on the unisex restrooms on his own accord, without any NPS supervisor directing him to do so. (Doc. 1 at ¶¶ 59–61). No other employee posted gendered signs there. (*Id.* at ¶ 61). Even so, Skeet's supervisors never noticed Skeet putting them up. (*Id.* at ¶ 88). Plaintiff also alleges that NPS had a culture of tacitly allowing sexual misconduct. (*Id.* at ¶ 90). That is sufficient factual content to draw an inference, at this stage, that NPS knew or should have known about and ignored Skeet's conduct. *See Schallock*, 941 P.2d at 1284 (finding reason to doubt that "acts were unauthorized and outside the course of employment when the employer permitted them to occur and recur over a long period at its place of business and during business hours").

Next, the Government contends that *Schallock* is distinguishable because Plaintiff was not an employee and Skeet was not a supervisor, and NPS had no knowledge of Skeet's activities. (Doc. 27 at 4–5). Instead, it claims, this case is analogous to *Smith*, where a court found that an employee's sexual assault and harassment of a co-employee was not in the scope of employment. (*Id.*) But Arizona courts have indicated that *Schallock* could apply in limited circumstances where the employer implicitly authorizes a tortious act by having actual or constructive knowledge and doing nothing. *See Doe*, 533 P.3d at 493 ("In [a case like *Schallock*], a reasonable jury could find that the employer knew or should have known of the manager's longstanding misconduct, and by doing nothing, condoned and implicitly authorized it."). Accepting all allegations in the Complaint as true, at this stage, Plaintiff has pled sufficient facts to show that Defendants implicitly authorized Skeet's wrongful acts by ignoring them. *See Schallock*, 941 P.2d at 1284.

### b. Control or Right of Control

The Government concedes that "Defendants, as Skeet's employer, did have a right to control Skeet's work as a general proposition." (Doc. 16 at 10). However, it contests whether they had a right to control Skeet when he committed the wrongful acts because they were not the kind of work he was hired to perform and they did not serve Defendants' interests. (*Id.*)

Relevant factors to determine "whether the employer exercised actual control or retained the right to control the employee's conduct" are "whether the act (a) was the kind of act the employee was hired to perform, (b) was commonly done by the employee, (c) occurred within the employee's working hours, and (d) furthered the employer's purposes or fell outside the employer's 'enterprise.' " *Engler*, 280 P.3d at 602 (citing *Higgins*, 173 P.3d at 461; *Anderson*, 501 P.2d at 456).

Skeet's acts were certainly not the kind of work he was hired to perform. On the other hand, Plaintiff has alleged that the unlawful recording was part of a pattern of conduct by Skeet, (Doc. 1 at ¶ 70), which tends to suggest that it was "commonly done."

*See Doe*, 533 P.3d at 223–24 (longstanding pattern of conduct of which employer has notice suggests employer implicitly authorized the conduct). Skeet also committed the acts while he was on the job, during working hours. (Doc. 1 at ¶¶ 54–62). While Skeet's conduct did not explicitly further Defendants' purposes, Plaintiff has sufficiently alleged that Defendants implicitly authorized the conduct. *Supra* Section III.A.1.a. For example, Plaintiff claims that Skeet's supervisors likely "look[ed] the other way" and tacitly allowed Skeet's conduct when they could have stopped it. (Doc. 1 at ¶ 90). Viewed in the aggregate, these facts, taken as true, are sufficient to establish that Defendants had a right to control Skeet when he committed the wrongful acts. *See Engler*, 280 P.3d at 602–03 (employer is more likely to have control if employer controlled where, when, or if employee performed the act).

Because Plaintiff has sufficiently alleged that Skeet engaged in a course of action that Defendants implicitly authorized and over which Defendants had the right of control, she has also sufficiently alleged that the wrongful act occurred in the scope of employment. *See Schallock* at 1282–83 (acts that are implicitly authorized or incidental to authorized conduct are within the scope of employment). The Court finds that Plaintiff has pled sufficient facts to allege a basis for subject matter jurisdiction under the FTCA. *See* 28 U.S.C. § 1346(b).

### 2. Failure to State a Claim

The Government next argues that the invasion of privacy and IIED claims should be dismissed because Plaintiff failed to state a claim. (Doc. 16 at 11–14).

#### a. Invasion of Privacy

Plaintiff claims that Defendants are vicariously liable for Skeet's invasion of her privacy. (Doc. 1 at ¶¶ 102–117). Arizona courts recognize the four-part classification of the tort of invasion of privacy under the Restatement (Second) of Torts (Am. L. Inst. 1997). *See Godbehere v. Phoenix Newspapers, Inc.*, 783 P.2d 781, 784 (Ariz. 1989) (citing *Reed v. Real Detective Publishing Co.,* 162 P.2d 133 (Ariz. 1945)). Those four classifications are invasion by (1) public disclosure of private facts; (2) intrusion upon

seclusion; (3) false light; and (4) appropriation of another's name or likeness. *See generally* Restatement (Second) of Torts § 652A. An individual is liable for the tort of intrusion upon seclusion when one "intentionally intrudes, physically or otherwise, upon the solitude or seclusion of another or his private affairs or concerns . . . if the intrusion would be highly offensive to a reasonable person." *Med. Lab'y Mgmt. Consultants v. Am. Broad. Companies, Inc.*, 306 F.3d 806, 812 (9th Cir. 2002) (quoting Restatement (Second) of Torts § 652B). An individual is liable to another for public disclosure of private facts "when one publicizes a matter concerning the private life of another that would be highly offensive to a reasonable person and is of no legitimate concern to the public." Restatement (Second) of Torts § 652D.

Plaintiff alleges that Skeet invaded her privacy by filming her in the restroom, where she had an expectation of privacy, and potentially distributing those recordings publicly. (Doc. 1 at ¶¶ 102–117). The Government does not argue that Plaintiff did not plausibly allege an invasion of privacy claim, only that Plaintiff did not plausibly allege that Defendants are vicariously liable. (Doc. 16 at 11–14). Plaintiff has stated a claim for invasion of privacy. *See* Restatement (Second) of Torts § 652B, D.

### b.     IIED

Plaintiff next alleges that Defendants are vicariously liable for Skeet's intentional infliction of emotional distress against Plaintiff. (Doc. 1 at ¶¶ 118–130). To bring a claim for intentional infliction of emotional distress in Arizona, a plaintiff must show (1) the defendant's conduct is "extreme" and "outrageous;" (2) the defendant either intended to cause emotional distress or recklessly disregarded the near certainty that such distress will result from his conduct; and (3) severe emotional distress occurred because of defendant's conduct. *Citizen Publ'g Co. v. Miller*, 115 P.3d 107, 110 (Ariz. 2005) (citing *Ford v. Revlon, Inc.*, 734 P.2d 580, 585 (Ariz. 1987)).

Plaintiff alleges that Skeet committed IIED against her because his recording of her in the restroom was extreme and outrageous and Plaintiff suffered severe emotional distress, including a diagnosis of PTSD. (Doc. 1 at ¶¶ 118–130). Again, the Government

argues only that Plaintiff did not plausibly allege that Defendants are vicariously liable. (Doc. 16 at 11–14). Plaintiff has stated a claim for IIED. *See Citizen Publ'g Co. v. Miller*, 115 P.3d at 110.

### c. Vicarious Liability

Plaintiff claims that Defendants are vicariously liable for invasion of privacy and IIED. (Doc. 25 at 12). Under Arizona law, an employer is vicariously liable for the acts of an employee only if those acts are within the scope of employment. *Engler*, 280 P.3d at 601. The Court has determined that, when taking all her allegations as true, Plaintiff has alleged sufficient facts to show that Skeet acted in the scope of employment. *Supra* Section III.A.1. Therefore, Plaintiff has stated claims for relief that are plausible on their face. *See Iqbal*, 556 U.S. at 678. The Court denies the Motion to Dismiss with respect to the invasion of privacy and IIED claims.

### B. Negligent Hiring/Supervision

Plaintiff also brings a claim of negligent hiring/supervision against Defendants. (Doc. 1 at ¶¶ 131–41). The Government contends that the Court lacks jurisdiction over this claim under the FTCA. (Doc. 16 at 15–17). The Court agrees.

Arizona courts have applied Restatement (Second) of Agency § 213 to consider these types of claims. *See, e.g.*, *Kassman v. Busfield Enters., Inc.*, 639 P.2d 353, 356 (Ariz. Ct. App. 1981); *Olson v. Staggs-Bilt Homes, Inc.*, 534 P.2d 1073, 1076 (Ariz. Ct. App. 1975). An employer is liable under a theory of negligent hiring, retention, and supervision if it fails to make proper regulations; employs improper persons involving risk of harm to others; fails to supervise activity; or permits or fails to prevent negligent or other tortious conduct by employees or agents on the premises or with instrumentalities under the employer's control. Restatement (Second) of Agency § 213. Plaintiffs assert that Defendants are liable for (1) failing to discover that Skeet was regularly in areas he was not authorized to be in; (2) failing to discover that Skeet was placing gendered signs on the restrooms, contrary to ordinary NPS practice; and (3) failing to implement appropriate training and/or consequences about sexual misconduct.

(Doc. 1 at ¶¶ 131–41). The Government argues all of those bases for liability fall under the FTCA's discretionary function exception. (Doc. 16 at 15–17).

There are several exceptions to the FTCA's waiver of sovereign immunity. *Conrad*, 447 F.3d at 764. One of these, the discretionary function exception, allows the United States to maintain immunity when employees perform a discretionary action on behalf of the Government. 28 U.S.C. § 2680(a); *Nanouk v. United States*, 974 F.3d 941, 944 (9th Cir. 2020). Applicability of the exception to a particular FTCA claim "turns on what it is 'based upon' and whether *that* specific wrongful act involves a 'discretionary function or duty.'" *Miller v. United States*, 992 F. 3d 878, 887 (9th Cir. 2021) (citing 28 U.S.C. § 2680(a)) (emphasis in original). The government bears the burden of establishing that the exception applies. *Nanouk v. United States*, 974 F.3d at 944 (citing *Chadd v. United States*, 794 F.3d 1104, 1108 (9th Cir. 2015)).

1. **Discretionary Function Exception**

The Supreme Court has established a two-pronged test to determine where the discretionary function exception applies. *Berkovitz v. United States*. 486 U.S. 531, 536–37 (1988); *see also Gonzalez v. United States*, 814 F.3d 1022, 1027–28 (9th Cir. 2016) (distinguishing the first "discretionary act prong" from the second "policy judgment prong"). Under the discretionary act prong, courts first ask whether the act in question is truly a discretionary action, i.e., "the product of judgment or choice." *Berkovitz*, 486 U.S. at 536. The discretionary function exception does not apply when an applicable "statute, regulation, or policy specifically prescribes a course of action." *Id.* Whether or not a mandatory directive has been imposed "is not primarily a factual inquiry, but a legal one." *Myers v. United States*, 652 F.3d 1021, 1030 n.5 (9th Cir. 2011). In making the determination, courts may consider whether the language of the controlling authority at issue "are casted in suggestive ([e.g.] 'should') rather than mandatory ([e.g.] ('must') terms." *Sabow v. United States*, 93 F.3d 1445, 1452–1453 (9th Cir. 1996), *as amended* (Sept. 26, 1996). The exception does not apply to acts governed by mandatory directives because those acts, by definition, do not involve choice. *Berkovitz*, 486 U.S. at

544.  "If the act did not involve an element of judgment or choice, the analysis ends there and the plaintiff's claim may proceed." *Nanouk*, 974 F.3d at 945.

But if the government's conduct involved an element of judgment or choice, a court must then move to the second policy judgment prong and ask whether the discretionary decision "is of the kind that the discretionary function exception was designed to shield." *Berkovitz*, 486 U.S. at 536.  In doing so, courts ask whether the action or decision "is grounded in social, economic, and political policy." *Young v. United States*, 769 F.3d 1047, 1053 (9th Cir. 2014).  The policy judgment prong is an objective inquiry focusing on whether the nature of the employee's conduct is "susceptible to policy analysis." *United States v. Gaubert*, 499 U.S. 315, 325 (1991). The inquiry does not consider the employee's subjective intent in exercising the discretion conferred.  *Id.*  If the challenged action or decision is "susceptible to a policy analysis," the government maintains its immunity and a court lacks subject matter jurisdiction to review the claim.  *Gonzalez*, 814 F.3d at 1027–28) (quoting *Gaubert*, 499 U.S. at 325).  Decisions relating to "hiring, training, and supervision of employees usually involve policy judgments" for these purposes.  *Miller*, 992 F. 3d at 886 (citing *Vickers v. United States*, 228 F. 3d 994, 950 (9th Cir. 2000)).

Plaintiff argues that Defendants had no discretion here because they were under a "directive from the House Oversight Committee to implement training and consequences for actions of sexual misconduct."[5]  (Doc. 1 at ¶¶ 136–138).  The hearing in question was held on September 22, 2016.  (Doc. 25-1 at 2).  Its purpose was "to determine what the Park Service is doing to stop [a pattern of sexual harassment] and find out why it keeps happening." (*Id.* at 5).  Plaintiff notes that testimony at the hearing described "a systemic culture of sexual misconduct in the national parks."  (Doc. 25 at 16).  There is also mention of an Office of the Inspector General report providing eighteen recommendations to NPS that, at least at that time, it had not implemented.

---

[5] Plaintiff provided the transcript of the House of Representatives Committee on Oversight and Government Reform hearing, *Examining Misconduct and Mismanagement at the Nat'l Park Serv.: Hearing Before the Comm. on Oversight and Gov't Reform H.R.*, 114th Cong. (2017), as an exhibit to her Response (Doc. 25-1).

- 15 -

(Doc. 25-1 at 9). However, Plaintiff does not identify any portion of the hearing transcript that establishes a policy that prescribes how NPS must supervise or train its employees.

Notably, the subject of the hearing was not sexual misconduct by NPS employees against park visitors. (Doc. 25-1 at 5–6). All of the misconduct discussed at the hearing, whether at Yellowstone, Yosemite, the Grand Canyon, or any other park, was about NPS employees, often in a supervisory role, harassing *other employees*. (*Id.*) Even if the hearing were to provide some directive for NPS, it would not apply to this case. But the Court cannot find any directive in the hearing transcript at all. (*See* Doc. 25-1). Because there is no mandatory directive, NPS's supervision and training of Skeet was a discretionary action. *See Berkovitz*, 486 U.S. at 536 (An action is discretionary unless "a federal statute, regulation, or policy specifically prescribes a course of action for an employee to follow.").

Since Defendants' conduct had an element of choice, the Court will look to the second policy judgment prong. The Government argues that its method of supervision of Skeet was grounded in policy because of the difficulty of getting to his location. (Doc. 16 at 16–17). Specifically, they cite "the remote nature of the work Skeet performed and the difficulty and expense required to get down to Phantom Ranch and back to the South Rim on a daily basis." (Doc. 16 at 16–17). It further claims that the ongoing government shutdown also informed Defendants' decisions about supervision of NPS employees at the time of Plaintiff's stay at Phantom Ranch. (*Id.* at 17).

The Court finds that Defendants' decisions about supervision and training of Skeet were susceptible to policy analysis, and therefore it does not have subject matter jurisdiction to review this claim. *See Miller*, 992 F. 3d at 886 ("[D]ecisions relating to the hiring, training, and supervision of employees usually involve policy *judgments* of the type Congress intended the discretionary function exception to shield.") (citing *Vickers v. United States*, 228 F. 3d at 950) (emphasis in original); *Nurse v. United States*, 226 F.3d 996, 1001 (9th Cir. 2000) ("[N]egligent and reckless employment, supervision, and

training . . . fall squarely within the discretionary function exception."). Therefore, the Court must dismiss Plaintiff's claim of negligent/hiring supervision. *See Nurse*, 226 F.3d at 1001.

### C. Claims Against NPS and Unknown Persons and/or Entities

Plaintiff brings claims against the United States, NPS, and Unknown Persons and/or Entities under the FTCA. (Doc. 1). The Government argues that the Court has no FTCA jurisdiction over (1) federal agencies and (2) individuals, such as the fictitious defendants. (Doc. 16 at 17). The Court agrees.

#### 1. FTCA Jurisdiction Over NPS

Under the FTCA, courts have jurisdiction only over the United States, not any federal agency. 28 U.S.C. § 2679(a); *Kocol v. United States*, 670 F. App'x 489, 490 (9th Cir. 2016) ("The United States is the only proper defendant in an FTCA action.") (quoting *Lance v. United States*, 70 F.3d 1093, 1095 (9th Cir. 1995)); *Plater v. United States*, 359 F. Supp. 3d 930, 941 (C.D. Cal. 2018) ("The FTCA only confers jurisdiction over the United States of America, not federal agencies or those in charge of those agencies." (citations omitted)); *Epstein v. United States*, 2017 WL 4227054, at *2 (S.D. Cal. Sept. 21, 2017) (dismissing FTCA claims brought against the Department of Veteran Affairs because the court had jurisdiction only over the United States). NPS, as a federal agency, is not a proper defendant to a FTCA claim. 28 U.S.C. § 2679(a). So, the Court must dismiss the claims against NPS. *See id.*

#### 2. Fictitious Defendants[6]

Similarly, Section 2679 accords federal employees absolute immunity from common-law tort claims arising out of acts they undertake in the course of their official duties. *Osborn v. Haley*, 549 U.S. 225, 229 (2007) (citing 28 U.S.C. § 2679(b)(1));

---

[6] Generally, federal courts do not favor the use of fictitious defendants. *Soo Park v. Thompson*, 851 F.3d 910, 928 n.21 (9th Cir. 2017). However, "where the identity of alleged defendants will not be known prior to the filing of a complaint . . . the plaintiff should be given an opportunity through discovery to identify the unknown defendants, unless it is clear that discovery would not uncover the identities, or that the complaint would be dismissed on other grounds." *Id.* (quoting *Gillespie v. Civiletti*, 629 F.2d 637, 642–43 (9thCir. 1980)).

*Wilson v. Horton's Towing*, 906 F.3d 773, 781 (9th Cir. 2018). As presently alleged, the Complaint contains no factual allegations in support of the claims against the fictious defendants. While the Complaint does not elucidate whether these Unknown Persons and/or Entities are Government employees or agencies, all allegations of wrongdoing in the Complaint relate to the actions of the Government, federal agencies, or federal employees. To the extent that the fictitious defendants are individuals, the Court must dismiss the claims against them. *See Blanchard v. Cty. Of L.A.*, 2022 WL 17081308, at *4 (C.D. Cal Aug. 25, 2022) (dismissing FTCA claims against fictitious defendants because the only proper defendant under the FTCA is the United States); *Cluff v. U.S. Customs & Border Prot.*, 2021 WL 4168179, at *4 (S.D. Cal. Sept. 14, 2021) (dismissing FTCA claims against fictitious defendants but allowing amendment so long as claims were not asserted under the FTCA and factual allegations were provided). Fictitious defendants under the FTCA, of course, cannot include federal agencies. *See* 28 U.S.C. § 2679(a).

### D. Leave to Amend

A court should "freely give leave [to amend] when justice so requires," Fed. R. Civ. P. 15(a)(2), "unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Lacey v. Maricopa Cnty.*, 693 F.3d 896, 926 (9th Cir. 2012) (en banc) (citation omitted). Typically, a district court should not dismiss a complaint with prejudice if an amendment could save the complaint. *Thinket Ink Information Resources, Inc. v. Sun Microsystems, Inc.*, 368 F.3d 1053, 1061 (9th Cir. 2004). Leave to amend may be denied when "the court determines that the allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency." *Schreiber Distrib. Co. v. Serv-Well Furniture C*o., 806 F.2d 1393, 1401 (9th Cir. 1986). In sum, leave to amend "is properly denied [where] amendment would be futile." *Carrico v. City and Cty. of San Francisco*, 656 F.3d 1002, 1008 (9th Cir. 2011).

Claims under the FTCA against federal agencies, such as NPS, are barred. *See* 28 U.S.C. § 2679(a). Since any amendment would be futile, the Court denies leave to

amend as to the FTCA claims against NPS.  *See Carrico*, 656 F.3d at 1008.  The Court, however, grants leave to amend for Plaintiff's claim of negligent supervision/hiring and Plaintiff's claims against Unknown Persons and/or Entities.  *See* Fed. R. Civ. P. 15(a)(2).

Accordingly,

**IT IS ORDERED** that the Stay (Doc. 24) in this matter is lifted.

**IT IS FURTHER ORDERED** that Defendant United States's Motion to Dismiss (Doc. 16) is **GRANTED** in part and **DENIED** in part as follows:

(1) The claims for invasion of privacy, IIED, and negligent hiring/supervision brought by Plaintiff Roselind Tonner against Defendant NPS are **DISMISSED** with prejudice;

(2) The claims for invasion of privacy, IIED, and negligent hiring/supervision brought by Plaintiff Roselind Tonner against Defendant Unknown Persons and/or Entities are **DISMISSED** without prejudice

(3) The claim for negligent hiring/supervision brought by Plaintiff Roselind Tonner against Defendant United States is **DISMISSED** without prejudice; and

(4) The Motion to Dismiss is **DENIED** as to Plaintiff's claims for invasion of privacy and IIED against Defendant United States.

Dated this 24th day of July, 2025.

Honorable Diane J. Humetewa
United States District Judge